# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| ED ITE CHEN, | : |  |
|---|---|---|
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | Civ. No. 16-385-RGA |
|  | : |  |
| RICARDO SAGRERA, et al., | : |  |
|  | : |  |
| Defendants. | : |  |

Ed Ite Chen, Captain Cook, Hawaii. *Pro Se* Plaintiff.

Ryan Patrick Newell, Esquire, and David Bolton, Esquire, Connolly Gallagher LLP, Wilmington, Delaware. Counsel for Defendant Ricardo Sagrera.

Thomas Godfroy, Huntsville, Alabama. *Pro Se* Defendant.

## MEMORANDUM OPINION

September $//$ , 2017
Wilmington, Delaware

*Richard G. Andrews*
**ANDREWS, U.S. District Judge:**

Plaintiff Ed Ite Chen, who appears *pro se,* filed this action on May 24, 2016. (D.I. 1). Plaintiff asserts jurisdiction by reason of a federal question under 28 U.S.C. § 1331 and diversity of citizenship of the parties under 28 U.S.C. § 1332. Defendants Ricardo Sagrera and Thomas Godfroy move to dismiss the Complaint pursuant to Rules 9 and 12(b)(1), (2), (3), (5), and (6) of the Federal Rules of Civil Procedure.[1] (D.I. 13, 35). Plaintiff opposes. (D.I. 21, 25). Plaintiff moves to submit newly discovered evidence. (D.I. 48). Defendant Sagrera opposes. (D.I. 51). The motions have been briefed by the parties.

## BACKGROUND

The Complaint raises claims of breach of fiduciary duty, common law fraud, computer fraud, and tortious interference with prospective business relationships. (D.I. 1). As alleged, Plaintiff 's claims arise out of his status as a shareholder and founder of Viceroy Chemical, Inc. and the actions of Defendants Sagrera and Godfroy. (*Id.* at p.4). Sagrera is described as the sole director and incorporator of Viceroy Chemical and, from 2014 to the present, the treasurer and secretary of Viceroy Chemical.[2] Godfroy is described as a NASA contractor and, from June 2014 to May 2015, a director and the chief executive officer of Viceroy Chemical.[3] (*Id.* at pp.3, 7).

On May 9, 2012, Plaintiff signed a memorandum of understanding ("MOU") in New York that provided for the creation of a new entity, ultimately named Viceroy

---

[1]On April 7, 2017, the Court granted a stipulation of voluntary dismissal with prejudice as to Defendant Lowenstein Sandler, LLP. (*See* D.I. 54).

[2]The Complaint contains an address for Sagrera in New York, New York.

[3]The Complaint contains an address for Godfroy in Huntsville, Alabama.

Chemical, Inc., and which gave him special financial, voting, veto, and patent or other intellectual work product reversion rights. (*Id.* at pp.5, 7, 19 at Ex. 3). Plaintiff alleges the MOU that established Viceroy Chemical and his rights as set forth therein give him a unique position in the company and give him standing to sue as an individual as opposed to bringing a derivative action. (*Id.* at p.19). In addition to Plaintiff, the MOU is signed by Sagrera for Riarma Investments and John T. Preston for Continuum Energy Tech. ("CET").[4] (*Id.* at p. 9, Ex. 3 at pp.38-44). The MOU provides that it shall be interpreted and construed under the laws of the State of New York, exclusive of its conflicts of law provisions, as if it were between and among New York residents entered into and to be performed entirely within New York. (*Id.* at Ex. 3 at p.43). It provides for dispute resolution through binding arbitration in New York and, if adequate remedies are not available at arbitration, the parties consent to the jurisdiction of courts located in New York. (*Id.*). Viceroy Chemical, Inc. was incorporated in the State of Delaware on June 12, 2012. (*Id.* at Ex. 4 at p.47).

In August 2012, Sagrera began a subtle and escalating campaign of intimidation and harassment "which culminated with Sagrera and his confederates sapping Viceroy of its capital, circulating forged documents among board members while hiding them from [Plaintiff]" and refusing to provide "the new general counsel of Viceroy Chemical with the allegedly executed documents." (*Id.* at pp.8-9). This occurred when Plaintiff's signature from the MOU was cut and pasted into the signature blocks of several other documents including a nondisclosure invention assignment agreement, an employment

---

[4]The MOU is not signed by Sagrera personally.

2

agreement, a Viceroy Chemical shareholder agreement,[5] and an amended

incorporation document sent to the Delaware Secretary of State.[6] (*Id*. at pp.9-14, Ex.

4). The documents were prepared by Lowenstein Sandler, LLP ("Lowenstein Sandler"),

a law firm retained by Sagrera. (*Id*. at pp.9, 12). Plaintiff alleges that Sagrera and

Lowenstein Sandler transmitted a document to the Delaware Secretary of State without

Plaintiff's permission. (*Id*. at p.12). Plaintiff never authorized Godfroy, Sagrera, or

Lowenstein Sandler to use his signature or to authorize any corporate actions on his

behalf. (*Id*. at p.10). Plaintiff alleges that the documents were never finalized, no

individual has original copies of the contracts, no one has a signature page with

everyone's signature, and no one from Viceroy Chemical has been able to produce

signed physical copies of the documents. (*Id*. at pp.11-12).

Plaintiff learned his signature had been forged in May 2014, August 2014, and

May 2015, through emails that originated with Sagrera and were forwarded to Plaintiff.

(*Id*. at p.14). On May 28, 2014, Lowenstein Sandler sent Plaintiff and Viceroy

Chemical's then general counsel, David Pernas, a set of contracts with Plaintiff's

signature, and indicated Plaintiff had electronically signed and sent the documents from

---

[5]Although the shareholder agreement is not an exhibit to the complaint, Sagrera provided the Court a copy as an exhibit to his motion to dismiss. (D.I. 15-2 at Ex. C).

[6]The amendment to the certificate of incorporation was filed on February 7, 2013 and deletes and replaces certain provision including the number of directors, as well as voting and liquidation sections. (*Id*. at Ex. 4 at pp.46-49). The signature page has a signature page for Plaintiff as president, "/s/ Ed Chen." (*Id*. at p.49). On the same date, February 7, 2013, Plaintiff signed a contribution agreement, that transferred certain assets to Viceroy Chemical. (D.I. 15-2 at Ex. D). Although the contribution agreement is referred to in the complaint, it was not attached as an exhibit. Sagrera provided the Court a copy as an exhibit to his motion to dismiss. (D.I. 15-2 at Ex. C).

3

his email account. (*Id.* at pp.15, 17). Plaintiff did not send the documents and they did not originate from his computer. (*Id.*). Plaintiff was unaware that the shareholder agreement, invention assignment agreement, and the employment agreement were signed and finalized and were the governing documents until Lowenstein Sandler sent the documents on May 30, 2014. (*Id.* at pp.16). At the time, Viceroy Chemical directors had been working on a set of governing documents with Pernas who was unable to secure the directors' signatures. (*Id.* at p.16). Although Plaintiff never agreed to a final version of the shareholder agreement, Sagrera presented different versions of a signature page as electronically signed by Plaintiff. (*Id.*). The shareholder agreement names the stockholders as Plaintiff, Roger W. Kirby, Harold Edgar, Viceroy Ventures, Inc., and CET. (D.I. 15-2 at Ex. C). Plaintiff alleges Sagrera threatened him after he informed Sagrera of the forged signatures. (*Id.* at pp.14, 17, at Ex. 9 p.76).

Also, in May 2014, Sagrera was reappointed to CET's contractual board seat and Godfroy was appointed director and CEO of Viceroy Chemical by Sagrera and his affiliate, CET. (*Id.* at pp.7-8.) Two out of the three directors for Viceroy Chemical shared this relationship with CET and voted as a bloc, thus controlling the three member board of directors and Viceroy Chemical's outstanding shares. (*Id.* at p.8). On July 30, 2014, Godfroy sent an email to Viceroy Chemical shareholders advising the board had met the previous day on an emergency basis, and was presenting a rescue financing proposal to the shareholders because Viceroy Chemical's cash had been completely depleted and it was need of an immediate capital infusion. (D.I. 1 at Ex. 21). The email provided the general terms of the rescue financing. (*Id.*). Plaintiff

4

states, "after breaching his fiduciary duties, Sagrera diluted Chen of his shares, and became the majority shareholder of the company giving him additional fiduciary duties to minority shareholders." (*Id.* at p.8).

In July 2014, Plaintiff met with oil executives to discuss technology that was never part of Viceroy Chemical's contemplated inventions in the contribution agreement[7] and the MOU. (*Id.* at p.30). The potential investors began their due diligence and, at this time, Sagrera produced documents forged by Lowenstein Sandler that cast into question all intellectual property produced by Chen. (*Id.*). Sagrera and Godfroy made a written demand to Plaintiff to cease and desist from seeking investors. (*Id.* at pp.17, 31; Ex. 16 at p.86). Plaintiff alleges the inventions were outside the scope of the contribution agreement and MOU, and Sagrera interfered with Plaintiff's prospective business relationship when he told third parties that Plaintiff was precluded from discussing any of his inventions with investors due to contractual agreements. (*Id.* at pp.17, 30-31).

In August 2014, Sagrera produced the email allegedly sent by Plaintiff with the signature pages. (*Id.* at p.15). Plaintiff asked Godfroy, who at the time was the CEO and director of Viceroy Chemical, to obtain the original emails from Sagrera. (*Id.* at p.15). Godfroy told Plaintiff that Sagrera had left the country in September 2014 and refused to tell Plaintiff if Sagrera had returned from abroad. (*Id.* at pp.15-16).

_____

[7]The contribution agreement provides that it is governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of law principles. (D.I. 15-2 at Ex. D at p.5).

In Count One, Plaintiff alleges that Sagrera breached his fiduciary duties when he: (1) committed fraud and forgery; (2) participated in violations of federal law (*i.e.*, Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(4) and (b)); (3) submitted misleading and fraudulent contracts to New York courts; (4) threatened Plaintiff; (5) diluted the value of Plaintiff's (and all other shareholders') shares by 98 percent and increased his equity position to that of a majority shareholder when Sagrera claimed the new discounted valuation was fair; (6) tortiously interfered with Plaintiff's prospective business relationship with investors; (7) failed to investigate Plaintiff's complaints of fraud and claimed the discounted valuation was fair because Plaintiff refused to cooperate with Sagrera and overlook the forgery and fraud; (8) refused to produce emails that Plaintiff requested; and (9) presented fraudulent documents as original and valid legal documents. (*Id.* at pp.19-21).

Plaintiff alleges that Godfroy breached his fiduciary duties when he: (1) refused to investigate fraud and forgery and covered up Sagrera's actions; (2) voted on and participated in an emergency financing round which was actually a scheme to dilute Plaintiff's shares by 98 percent in valuation and that advanced his own equity position in the company; and (3) advised Plaintiff he would be liable for trying to find investors for his invention. (*Id.* at pp.21-22).

In Count Two, Plaintiff alleges that Sagrera engaged in common law fraud when he: (1) failed to provide Plaintiff with hard copies of contracts purportedly signed by Plaintiff; (2) failed to inform Plaintiff that he purportedly signed contracts; (3) provided Plaintiff with an amended submission to the Delaware Secretary of State signed by Sagrera, but actually submitted the document as signed by Plaintiff; (4) coordinated in

6

submitting documents with Plaintiff's falsified signatures; (5) refused to produce information requested by Plaintiff; and (5) kept the forged documents from Plaintiff. (*Id.* at pp.22-26).

Count Three is brought pursuant to the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C, § 1030, and alleges that Sagrera: (1) accessed a protected computer; (2) used the internet to email fraudulent documents to Plaintiff and to the Secretary of State of the State of Delaware; (3) exceeded his authorized access when he used his registered copies of Adobe Photoshop and other Adobe products to conduct unlawful activities; (4) exceeded his access to corporate computers; and (5) used computers to affix Plaintiff's signature to a document transmitted to the Delaware Secretary of State's secured website. (*Id.* at pp.27-29). Finally, Count Four alleges Defendants tortiously interfered with Plaintiff's prospective business relationship. (*Id.* at pp.29-31).

Plaintiff seeks compensatory damages for the loss of two million dollars in equity value, $300,000 salary, control over his intellectual property, a one million dollar business opportunity, no less than $800,000 for fraud, $8,600 for investigating his CFAA claim, punitive damages, and declaratory relief. (*Id.* at pp.21, 26, 29, 32).

Defendants move for dismissal under Rules 9 and 12(b)(1), (2), (3), (5), and (6) on the grounds of: (1) improper venue under Rule 12(b)(3); (2) improper service under Rule 12(b)(5); (3) lack of personal jurisdiction under Rule 12(b)(2); (4) want of subject matter jurisdiction under Rule 12(b)(1); and (5) failure to state claims upon which relief may be granted under Rule 12(b)(6). *See* Fed. R. Civ. P. 9, 12(b)(1), (2), (3), (5), and (6). The Court turns to the issue of improper venue.

## STANDARDS OF LAW

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss for improper venue. The movant has the burden of proving that venue is improper in the selected forum. *See Myers v. American Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982). The question of whether venue is wrong or improper is generally governed by 28 U.S.C. § 1391. *See Atlantic Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S.Ct. 568, 577 (2013). Section 1391 provides that "[a] civil action may be brought in--(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

When venue is challenged, the Court must determine whether the case falls within one of the three categories set forth in § 1391(b). *See Atlantic Marine Constr. Co.*, 134 S.Ct. at 577. If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Id.* A contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in

8

§ 1391(b). As a result, a case filed in a district that falls within the venue requirements of § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3). *Id.* at 577.

Section 1404(a) provides a mechanism for enforcement of forum selection clauses that point to a particular federal district. *See Atlantic Marine Const. Co.*, 134 S.Ct. at 579. In addition, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." *Id.* at 580.

## Venue

Relying upon the forum selection clause in the stockholder's agreement, Defendants move to dismiss on the grounds that venue is not proper in the District of Delaware. In the alternative, they move to transfer the matter based upon the forum selection clause. Defendants also argue that Plaintiff's claim that his signature on the document is forged has no bearing on the venue issue. Defendants point to two documents - the MOU and the contribution agreement - both of which Plaintiff admits he signed and both of which provide for the application of New York law with the MOU also providing for the resolution of disputes by courts located in New York as providing a basis for improper venue in this district.

Plaintiff opposes on the grounds that: (1) the shareholder agreement contains fraudulent signatures; (2) Sagrera argued that venue was improper in a case Plaintiff filed in the Supreme Court of the State of New York, New York County, *Chen v. Continuum Energy Technologies*, Index No. 155423/2015 ("New York State case") and, therefore, waived the forum selection clause in the shareholder agreement and the

9

MOU; and (3) the New York State case filed against Sagrera was dismissed on jurisdictional grounds.

As discussed by the Supreme Court, the forum selection clause relied upon by Defendants does not provide a basis by itself to dismiss or transfer this matter under Rule 12(b)(3) or § 1406(a). Venue may be proper under relevant venue statutes or if a party has consented to suit in a particular district, thus having waived any right to challenge venue. See, e.g., Neirbo v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168 (1939); Davis v. Smith, 253 F.2d 286, 288 (3d Cir. 1958); Standard Oil Co. v. Montecatini Edison S.p.A., 342 F. Supp. 125, 132 n.7 (D. Del.1972).

Plaintiff argues that Sagrera has waived his right to contest venue based upon his representation in the New York State case. He also asserts that the New York State case was dismissed on jurisdictional grounds. The Court takes judicial notice that Godfroy was not a party to the New York State case. The Court takes further judicial notice that on September 25, 2015, the Supreme Court of the State of New York granted Sagrera's motion to dismiss, without prejudice to amend, based upon Plaintiff's failure to state a claim, not for jurisdictional grounds, as Plaintiff contends. (D.I. 16-2 at p.2). Another defendant in that case, Riarma, was dismissed without prejudice for Plaintiff's failure to demonstrate personal jurisdiction. (Id.). When Plaintiff determined not to amend, the New York State Court entered judgment and dismissed the claims against Sagrera without prejudice to claims raised against Sagrera in Chen v. Sagrera, 15-598-RGA (D. Del.) (voluntarily dismissed Apr. 19, 2016). (D.I. 21 at p.11) The pleadings before the Court do not indicate that Sagrera waived his right to contest venue in the instant case.

The Court next turns to the issue of whether Defendants' service as directors and officers of Viceroy Chemical under Delaware's nonresident director consent statute, 10 Del. C. § 3114, constitutes a waiver of the venue protection traditionally afforded defendants. Under § 3114(a) and (b), a "nonresident . . . who . . . accepts election or appointment" as an officer or director of a Delaware corporation "shall . . . be deemed thereby to have consented to the appointment" of the corporation's registered agent (or if there is none, the Secretary of State) for service of process in civil actions brought in the state.[8] 10 Del. C. § 3114(a) & (b).

The District of Delaware has previously considered the waiver of venue issue as it relates to directors' service under § 3114 and federal venue statues, conducted a thorough analysis, and determined that absent an "assertion in the Complaint (or otherwise) that Defendants have expressly appointed [] an agent, through written designation or by taking other similar action, [it] decline[d] to find that Defendants have waived their federal venue privilege in the manner required by [] Supreme Court[] case law." *In re First Solar, Inc. Derivative Litigation*, 2013 WL 817132, *6 (D. Del. Mar. 4, 2013) (relying upon *Olberding v. Illinois Central Road Co.*, 346 U.S. 338 (1953); *Neirbo*

_____

[8]Plaintiff followed Delaware law in serving Defendants under Rule 4(e)(1) when the summonses were addressed to Defendants, individually, in care of Viceroy Chemical and, with the complaints, were delivered to Corporation Service Company ("CSC"), Viceroy Chemical's registered agent, for service of process. (*See* D.I. 15, 17, 18, 37). Defendants contend that § 3114 is inapplicable and argue the Complaint raises only claims that are personal in nature and not claims that Defendants breached fiduciaries duties in their capacities as directors or officers. For purposes of determining venue, the Court assumes, without deciding, that the complaint properly states claims that Defendants breached their fiduciary duties, and thus falls under the ambit of § 3114. Defendants provided declarations that they did not appoint CSC as their agents and did not authorized CSC to accept service of process on their behalf. (*See* D.I. 15, 37).

11

*Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939); *Davis v. Smith*, 253 F.2d 296 (3d Cir. 1958)).

Here, based upon the allegations in the Complaint and Defendants' positions in moving to dismiss, the Court concludes that Defendants have not consented to venue in this Court and have not waived their federal venue privilege. Notably, Defendants did not expressly appoint CSC to accept service on their behalf. Instead, they were served under Delaware's statute that designates an in-state agent for service of process by reason of Defendants' voluntary decisions to serve as directors and officers of a Delaware corporation. *See In re First Solar, Inc. Derivative Litigation*, 2013 WL 817132; *see also* 10 Del. C. § 3114. Because the was no actual consent to service, the Court declines to find that Defendants have waived their federal venue privilege.

The Court must next determine whether venue in this District is appropriate under § 1391. Section 1391(b)(1) provides that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Here, none of Defendants are residents of Delaware. (D.I. 1 at p.1). As a result, this section cannot serve as a basis for venue.

Section 1391(b)(2) provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." "Events or omissions that might only have some tangential connection with the dispute in litigation are not enough." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). The test "is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" *Id.* Here, the filings do not indicate that a substantial portion of the events or

12

omissions giving rise to the claims at issue occurred in Delaware. The only act that
appears to have happened in Delaware is in February 2013 when Sagrera and
Lowenstein Sandler allegedly filed the certificate of amendment of Viceroy Chemical
with the Delaware Secretary of State. With regard to other events or omissions giving
rise to Plaintiff's claim, the Court takes judicial notice that the New York State case
contains many of the same allegations as the instant case and, during a September 24,
2015 hearing in that case, Plaintiff represented to the Court that Sagrera repeatedly
represented himself from his New York office, all transactions happened in New York,
"all of the intimidation, all that stuff happened in New York City through e-mail and in
person and things like that", and "all the contracts were signed in New York City." (D.I.
28-5 at p.100). Therefore, the Court concludes that venue does not lie in this district
under § 1391(b)(2).

Section 1391(b)(3) states that "if there is no district in which an action may
otherwise be brought as provided by [Section 1391(b)(1) or (2) ]," then the civil action
may be brought in "any judicial district in which any defendant is subject to the court's
personal jurisdiction with respect to such action." Because a substantial part of the
events giving rise to Plaintiff's claims took place in the Southern District of New York, as
will be explained below, venue could properly be laid in that district and § 1391(b)(3)
does not apply. This case does not fall within the three categories set forth in § 1391
and, therefore, venue in this Court is improper.

## Transfer of Venue

Because venue is not proper in this District, I will consider whether it is
appropriate to transfer the case to the United States District Court for the Southern

13

District of New York. Section 1406 provides, "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a);[9] *see also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66 (1962). "Dismissal is considered to be a harsh remedy . . . and transfer of venue to another district court in which the action could originally have been brought, is the preferred remedy." *Goldlawr, Inc.*, 369 U.S. at 466. Transfer under § 1406(a) is appropriate even where the court in which the case was filed lacked personal jurisdiction over the defendants. *Id.* at 466-67; *United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964). Section 1406(a) was enacted to avoid the "injustice which had

---

[9]Unlike § 1406, 28 U.S.C. § 1404(a) "does not condition transfer on the initial forum's being "wrong." And it permits transfer to any district where venue is also proper (*i.e.*, "where [the case] might have been brought") or to any other district to which the parties have agreed by contract or stipulation. Section 1404(a) therefore provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atlantic Marine Constr. Co., Inc.*, 134 S.Ct. at 579. "[A] proper application of § 1404(a) requires that a forum-selection clause be "given controlling weight in all but the most exceptional cases." *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1998). The Court considers the clauses in the MOU and the contribution agreement. The MOU provides a dispute resolution clause that it be construed under the laws of the State of New York and that the parties consent to the jurisdiction of courts located in the State of New York to the extent remedies may not be available after arbitration. However, neither Sagrera personally, nor Godfroy are parties to the MOU. The contribution agreement contains a governing law provision, but not an agreement to jurisdiction in a specific court. Finally, while the stockholder's agreement contains a forum selection clause, I must accept as true the allegations in the Complaint including those that Plaintiff's signature is forged on the agreement. If Plaintiff was not a party to the agreement, the presence of a forum selection clause has no effect on him. *See e.g.*, *Sadler v. Balboa Capital Corp.*, 2009 WL 1082023 (W.D. Pa. Apr. 22, 2009) (parties did not have contract with respect to lease that allegedly contained forged signature and, thus, presence of forum selection clause contained therein is meaningless); *Kiah v. Singh*, 2009 WL 47021 (D.N.J. Jan. 6, 2009) (court cannot conclude contracts contained appropriate forum selection clauses in the face of certified statement that they contained a forged signature).

14

often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess" as to the facts underlying the choice of venue. *Goldlawr, Inc.*, 369 U.S. at 466.

Defendants move to dismiss on the basis of improper venue but, in Sagrera's reply brief, in the alternative to dismissal, he seeks a transfer and advises the Court that subject to, and without waiving, all defenses and objections to Plaintiff's claims, he does not dispute the exercise of jurisdiction over him by the appropriate state and/or federal court(s) in New York with respect to Plaintiff's claims asserted in this action. (*See* D.I. 38 at p.6).

In light of the foregoing, I find that a transfer is appropriate. As discussed, venue is proper in the Southern District of New York because a "substantial part of the events or omissions giving rise" to Plaintiff's claims occurred within that judicial district. Also, Sagrera advises the Court he consents to the exercise of jurisdiction over him by the appropriate federal court. Finally, given Godfroy's former status as a director and CEO of Viceroy Chemical, it is highly likely that the Southern District of New York can exercise personal jurisdiction over him.

Based upon the foregoing, I conclude that the Southern District of New York is the appropriate venue for this action, and I will transfer the case there.

## CONCLUSION

For the above reasons, the Court will: (1) grant Defendants' motion to dismiss to the extent it finds that venue is not proper in this District and will dismiss without prejudice to renew the remaining issues raised in Defendants' motion to dismiss (D.I. 13, 35); (2) dismiss without prejudice to renew Plaintiff's motion to submit newly discovered evidence (D.I. 48); and (3) direct that this matter be transferred to the United States District Court for the Southern District of New York.

An appropriate order will be entered.